# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| MAURICIO COREAS,<br>ANGEL GUZMAN CEDILLO and<br>WILLIAM KEMCHA,<br><br>      Petitioners,<br><br>      v.<br><br>DONNA BOUNDS,<br>*in her official capacity as Warden*,<br>*Worcester County Detention Center*,<br>JACK KAVANAUGH,<br>*in his official capacity as Director*,<br>*Howard County Detention Center*,<br>JANEAN OHIN,<br>*in her official capacity as*<br>*Acting Baltimore Field Office Director*,<br>*U.S. Immigration and Customs Enforcement*,<br>MATTHEW T. ALBENCE,<br>*in his official capacity as Deputy Director*<br>*and Senior Official performing the duties of*<br>*the Director of the U.S. Immigration*<br>*and Customs Enforcement*,<br>and<br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT,<br><br>      Respondents. | Civil Action No. TDC-20-0780 |

**MEMORANDUM ORDER**

Pending before the Court is Petitioner Mauricio Coreas's Renewed Motion for a Preliminary Injunction seeking release from the Howard County Detention Center in Jessup, Maryland at which he is detained by United States Immigration and Customs Enforcement ("ICE") on alleged immigration violations. On April 3, 2020, the Court issued a memorandum opinion and order denying without prejudice a Motion for a Temporary Restraining Order ("TRO") in

which Petitioners Coreas and Angel Guzman Cedillo sought release based on their claim that their continued ICE detention during the COVID-19 pandemic violated their right to due process under the Fourteenth Amendment to the United States Constitution.  *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133 at *1, *5 (D. Md. Apr. 3, 2020) ("*Coreas I*").  In that opinion, the Court concluded that although it did not find a likelihood of success on the merits of Coreas's claim in light of the lack of any evidence that the Coronavirus had entered HCDC, it would find such a constitutional violation likely upon either a showing that a detainee or staff member at HCDC had tested positive for COVID-19, or upon Respondents' failure to certify that they were testing all individuals at HCDC exhibiting COVID-19 symptoms.  *Id.* at *11-13.  The Court also found that under such circumstances, the Court would find likely irreparable harm to Coreas and that the balance of the equities and the public interest would favor release.  *Id.* at *13-14.  Where the vast majority of the analysis necessary to resolve the present Motion is set forth in *Coreas I*, the Court fully adopts, restates, and incorporates by reference *Coreas I* as part of this memorandum order.

On April 25, 2020, in accordance with the Court's prior order, Respondents reported that a nurse at HCDC had tested positive for COVID-19.  Although the nurse works at HCDC only one day per week, on Monday, April 20, 2020, she worked in the medical unit at HCDC and interacted with seven to eight detainees.  On Wednesday, April 22, the nurse began to feel ill, and she tested positive on Thursday, April 23.  Coreas filed the present Motion on April 27, 2020.

**DISCUSSION**

In order to succeed on a motion for a preliminary injunction, a party must establish (1) a likelihood of success on the merits; (2) a likelihood of "irreparable harm in the absence of preliminary relief"; (3) that the balance of equities tips in the moving party's favor; and (4) that "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008). Based on its prior analysis, the Court finds that the presence of an individual with COVID-19 inside HCDC, combined with the conditions of confinement for Coreas, the deficiencies in Respondents' mitigation measures at HCDC, and Coreas's status as a detainee with a high-risk health condition that places him at heightened risk of death or serious illness from COVID-19, establishes a likelihood of success on the merits of Coreas's constitutional claim. *Coreas I*, 2020 WL 1663133 at *11-13. Based on that same analysis, the Court further finds that under the present conditions of confinement, there is likely irreparable harm to Coreas and that the balance of the equities and the public interest favor release. *Id.* at *13-14. Accordingly, the Court will grant the Motion.

Although this conclusion is largely self-executing based on the Court's prior analysis, the Court has considered possible reasons not to grant the preliminary injunction contemplated by that analysis. First, Respondents suggest that the presence at HCDC of the nurse who tested positive for COVID-19 does not alter the landscape because surveillance video supports the conclusion that she did not interact with Coreas, and that she was wearing personal protective equipment ("PPE") during her shift. However, PPE does not necessarily prevent the transmission of the Coronavirus. Greifinger Second Decl. ¶ 7, Renewed Mot. Prelim. Inj. Ex. 53, ECF No. 76-6 ("The use of personal protective equipment . . . does not eliminate the risk of COVID-19 spread . . . ."). Moreover, the Court never conditioned its analysis on direct contact between Coreas and an individual with COVID-19. Respondents acknowledge that the nurse interacted with seven to eight detainees and do not specify whether she interacted with other medical or correctional staff, and, if so, whether she wore PPE at all times when in the presence of other staff. Although Respondents report that HCDC is conducting some form of contact tracing, they have not reported that all individuals who interacted with the nurse were quarantined. There appear to be no plans

to test these individuals. Although HCDC's post-Motion review of the health status of detainees, limited only to those in Coreas's housing unit, did not identify anyone with symptoms, the lack of overt symptoms does not establish that no one at HCDC was exposed to the Coronavirus during the nurse's shift. *Id.* ¶ 11(c) (noting evidence that many individuals with the Coronavirus exhibit mild or no symptoms). The Court therefore concludes that the nurse constitutes an actual case of an individual with COVID-19 at HCDC who interacted with others inside the facility, presenting a health risk to all individuals at HCDC, including Coreas. *Id.* ¶ 8 (asserting that a "review of policies and guidelines at both the Howard and Worcester County Detention facilities indicate that ICE and county officials will be unable to prevent the spread of COVID-19"); *see also id.* ¶ 6 ("Once COVID-19 is introduced into [correctional] facilities, it spreads like wildfire.").

Second, the Court has considered whether circumstances inside HCDC have changed to a sufficient degree since April 3 to warrant a re-examination of the Court's prior analysis. They have not. In its prior opinion, the Court concluded that had the Coronavirus been present at HCDC, there would likely be a constitutional violation because in that circumstance, the deficiencies in the mitigation measures in effect at that time would establish deliberate indifference to the health and safety of a high-risk detainee such as Coreas. *Coreas I*, 2020 WL 1663133 at *11-12. In particular, the Court identified the lack of any social distancing measures, the lack of any accommodations to protect detainees with high-risk health conditions, and the lack of any testing for COVID-19 as notable deficiencies. *Id.* at *11. Based on Respondents' submission, although some additional measures have been adopted since April 3, such as the wearing of masks inside the facility, none of these identified deficiencies have been addressed. Even though HCDC remains below capacity, no social distancing measures have been implemented, as confirmed by the Warden's statement that the 24 detainees in Coreas's housing unit continue to eat lunch

together. Kavanaugh Decl. ¶ 14, Opp'n Renewed Mot. Prelim. Inj. Ex. 1, ECF No. 82-1. No policies specifically aimed at protecting detainees with high-risk health conditions have been adopted. Although HCDC has, through ICE, certified that it would test any individuals with COVID-19 symptoms, it has not actually tested anyone to date, even though the nurse who tested positive for COVID-19 interacted with several detainees and Coreas has provided evidence, including a declaration by an attorney, that at least two individuals with symptoms have not been tested. Yorick Supp. Decl. ¶¶ 3-4, Renewed Mot. Prelim. Inj. Ex. 52, ECF No. 76-5. The Court therefore finds no reason to revisit its determination of likely deliberate indifference to inmate health and safety under the circumstances that have now come to pass. *Coreas I*, 2020 WL 1663133 at *11-12. Moreover, the Court's separate finding, that the detention of a civil detainee with a high-risk health condition in a facility exposed to the Coronavirus likely imposes unconstitutional punishment because the conditions bear no reasonable relationship to the purpose of the detention, is not dependent on the specific mitigation measures present at HCDC. *Id.* at *12-13.

Finally, the Court notes that the balance of the equities and public interest continue to favor the granting of the preliminary injunction. Beyond the Court's prior analysis, *id.* at *13-14, the Court notes that the failure to address the previously identified deficiencies in mitigation measures, and HCDC's propensity to respond to any complaints raised by Coreas by placing him in administrative segregation, which it has now done twice since the Court's April 3 order, confirm that release on conditions, rather than any modification of conditions, is warranted at this time.

The Court's determination is consistent with that of other courts that have released immigration detainees with high-risk health conditions who are at risk of exposure in ICE detention facilities. *See, e.g.*, *Fofana v. Albence*, No. 20-10869, 2020 WL 1873307 at *7-9, *11

(E.D. Mich. Apr. 15, 2020) (granting release to a detainee with a high-risk medical condition upon a finding of deliberate indifference to a "serious risk of illness and death from exposure to COVID-19" where, even though there was no confirmed case of the Coronavirus in the facility, social distancing was not observed and medical facilities were substandard); *Valenzuela Arias v. Decker*, No. 20-2802 (AT), 2020 WL 1847986 at *1, *6-7 (S.D.N.Y. Apr. 10, 2020) (granting release based on a finding of a likelihood of success on a deliberate indifference claim where the detention facility had confirmed cases of the Coronavirus, did not protect high-risk individuals, and could not enforce social distancing); *Coronel v. Decker*, No. 20-2472 (AJN), 2020 WL 1487274, at *4-6 (S.D.N.Y. Mar. 27, 2020) (granting release based on a finding of deliberate indifference to the medical needs of high-risk detainees for social distancing where the Coronavirus was known to be in a detention facility and "the record demonstrates that ICE has not taken any action to address the particular risks COVID-19 poses to high risk individuals like Petitioners here"); *Basank v. Decker*, No. 20-2518 (AT), 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020) (granting release based on a finding of deliberate indifference based on the absence of social distancing within the detention facility and the absence of any "steps to protect high-risk detainees like Petitioners" in facilities where the Coronavirus was present).

Accordingly, where the Court has found that all four prongs of the preliminary injunction analysis have been met, the Motion will be granted. *See Winter*, 555 U.S. at 20. Coreas will be ordered released on the conditions proposed by ICE, as modified in the accompanying Order, as well as the following conditions: (1) maintaining residence at the designated address in Maryland and self-quarantining there for the first 14 days following his release; (2) location monitoring, at the discretion of ICE; and (3) compliance with the terms of supervised release set in *United States*

*v. Coreas*, No. TDC-15-0447 (D. Md.), including reporting, by telephone if necessary, to the assigned United States Probation Officer within 72 hours of release from ICE custody.

Finally, the Court will not require a bond in this case. Although "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," Fed. R. Civ. P. 65(c), the Court "retains the discretion to set the bond amount as it sees fit or waive the security requirement." *Pashby v. Delia*, 709 F.3d 307, 331-32 (4th Cir. 2013). Where the financial impact to Respondents of an improperly imposed injunction is limited and would not create any significant hardship, and the Court found in Coreas's criminal case that he has no assets in the United States and could not pay a fine, Presentence Investigation and Report ¶¶ 46-47, *United States v. Coreas*, No. TDC-15-0447 (D. Md.) (ECF No. 33), the Court will waive the security requirement. *See Pashby*, 709 F.3d at 331-32; *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) (noting that "[i]n some circumstances, a nominal bond may suffice" and citing a case in which the bond was set at $0).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Coreas's Renewed Motion for a Preliminary Injunction, ECF No. 76, is GRANTED. The injunction will be set forth in a separate order.

Date: April 30, 2020

      /s/ *Theodore D. Chuang*
      THEODORE D. CHUANG
      United States District Judge